In re John Stokes KIRK, Jr., Debtor.

Esther S. DIXON, Plaintiff,

v.

John Stokes KIRK, Jr., Defendant.

**Bankruptcy No. 80–00110.**
**Adv. No. 800443.**

United States Bankruptcy Court,
E. D. Virginia,
Norfolk Division.

Feb. 5, 1981.

Dean W. Sword, Jr., Portsmouth, Va., for debtor.

Kenneth L. Dietrick, of Dietrick & Carter, Portsmouth, Va., for plaintiff.

HAL J. BONNEY, Jr., Bankruptcy Judge.

Prior to his filing bankruptcy early in 1980, John Stokes Kirk, Jr., the debtor, was a logger and in the course of that enterprise entered into an agreement with the plaintiff, Esther S. Dixon, for the purchase of standing timber from her. At the time of the bankruptcy, he was indebted to her, it was alleged, for $6,968.68 and she now brings this suit seeking to have the debt declared nondischargeable and judgment entered in her favor, alleging on the part of the debtor a breach of a fiduciary duty, embezzlement, fraud, false pretenses and false representations.

Kirk and Dixon entered into a written agreement on October 3, 1979, by which he would cut the timber, pine and a little hardwood, from an eighty acre tract. She was to be paid weekly for the timber removed the previous week. The cut timber was to be measured by the Doyle scale at the mills where Kirk sold the logs and there is no dispute as to measurements or quantity cut.

Additionally, the agreement provided that Kirk, upon completion of the cutting, would repair the damage done to the property by the logging operation by restoring the roads, clearing limbs and tree-tops, and paying for any damage to adjacent crops.

Kirk began cutting immediately and removed considerable timber for which he was to pay $80 per thousand board feet for the pine and $30 for the hardwood.

A record of the transactions is useful and the following chart sets them forth:

| Statements Dated | For Tickets Dated | Amount | Paid |
|---|---|---|---|
| October 17, 1979 | October 5, 9 | $ 378.48 | October 23 |
| October 18 | October 19, 18, 19, 18, 18 | 946.72 | October 28 |
| October 19 | October 19 | 191.76 | October 28 |
| October 25 | October 23, 24 24, 25, 25, 19 | 1,271.36 | November 15 |
| November 2 | November 2, 1, October 31, 30, 30, 29, 26, November 2 | 1,600.32 | Unpaid |
| November 9 | November 8, 9, 7 | 555.84 | January 7, 1980 |

| Statements Dated | For Tickets Dated | Amount | Paid |
|---|---|---|---|
| November 20 | November 19, 19 | 487.92 | January 7, |
| November 30 | November 29, 26, 27, 28 | 695.21 | Unpaid |
| December 3 | December 3 | 244.56 | Unpaid |
| December 14 | December 11, 13 | 516.72 | Unpaid |
| December 21 | December 17, 19, 18 | 748.96 | Unpaid |
| Single statement dated November 23, December 6, January 3 | November 21, 29, 30, December 4, 5, 6, 10, 12, 20, 21, 28, 27 January 22, 23, 17, 18 | 1,734.60 | Unpaid |
| Undated pulpwood statement reflecting November 27, January 3 | | 301.85 | Unpaid |
| January 4, 1980 | December 28 | 249.60 | Unpaid |
| Single statement dated January 25, January 28 | January 25, 28 | 207.90 | Unpaid |

Several points are significant. Note the absence of pure continuity. The November 2nd statement was, admittedly, withheld. Note the tardiness of payment when payment was made. It may be concluded that after the October 28th payment, fraud and deceit entered the picture.

■ The plaintiff relies, legally, upon 11 U.S.C. § 523(a)(4) to support that portion of her cause of action grounded in "breach of a high trust." Simply because one is supposed to do something and doesn't and even if one does not pay for property of another trusted to him, a fiduciary capacity has not existed, in the bankruptcy sense, in the first place. Really, it was long ago settled that such an exception to discharge applies only to express, technical trusts. A very narrow use of this exception to discharge is permitted. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), applied in this Court and expounded upon in the case of *Borg-Warner Acceptance Corporation v. Miles*, 5 B.R. 458 (Bkrtcy., 1980). See cases cited therein.

Kirk held no fiduciary duty to Mrs. Dixon. He was to pay her for timber cut and did not. This is no more a fiduciary duty here than taking meat from the butcher and not paying for it. It may be something else.

■ The remaining legal grounds arise from 11 U.S.C. § 523(a)(2) which says in part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services or an extension, renewal or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud . . . .

It was actually fraudulent and the use of false pretenses and false representation to manipulate the tickets thus deceiving Mrs. Dixon. Kirk thereby hid from her the knowledge he had cut and removed certain logs from her woods. This was compounded by his dire financial condition placing his ability to pay very much in peril; yet, he continued to take her property although unable to pay for it.

■ He who seeks a discharge of his debts in bankruptcy must come with clean hands.

This case clearly fits within the test established in the landmark decision on the subject, *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540 (W.D.Va.1967):

1—The making of a false representation by the debtor,

2—the knowledge at the time that it is false,

3—it being made with the intent and purpose of deceiving,

4—the creditor having relied on the representation, and

5—the creditor sustaining loss and damage as the proximate result.

Also see *Hisey v. Lewis-Gale Hospital*, 27 F.Supp. 20 (W.D.Va.1939); *In re Philpott*, 37 F.Supp. 43 (S.D.W.Va.1940).

The defendant Kirk argues that being in financial difficulty is not to be equated with dishonesty. True, but it supplies a motive for manipulation of tickets and, further, it provides a key to the overall picture.

Rather than deceive the lady, he should have (1) walked away and taken not a board foot more or (2) he should have fully divulged his situation and permitted her to decide whether she wished to assume the greater risk.

The Court finds the debt nondischargeable in bankruptcy.

The Court enters judgment for the plaintiff against the defendant in the amount of $6,299.72, the total of the unpaid statements, at lawful interest.

The fact that the plaintiff's property was damaged by the defendant is undisputed, but the amount of damage is uncertain; therefore, the Court makes no award for this.

IT IS SO ORDERED.